# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION

## CIVIL NO. 1:04CV68

| | |
|---|---|
| DARCI ANN O'NEILL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| Vs. ) | **MEMORANDUM AND ORDER** |
| ) | |
| HENDERSON COUNTY HOSPITAL ) | |
| CORPORATION, d/b/a MARGARET ) | |
| R. PARDEE MEMORIAL HOSPITAL; ) | |
| and GAYLE SAMS, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER** is before the Court on the Defendants' timely objections to the Memorandum and Recommendation of United States Magistrate Judge Dennis L. Howell which granted in part and denied in part the Defendants' motion for summary judgment.

## I. FACTS

This case arises out of Plaintiff's termination as an emergency room nurse with Margaret R. Pardee Memorial Hospital, by Gayle Sams, (collectively "the Defendants") the director of the emergency services department within which the Plaintiff worked, for allegedly viewing pornographic websites from her work computer. The Plaintiff, at the relevant time period was eight months pregnant with a child who had been diagnosed with Trisomy 18, a genetic disease which generally causes a child to die in utero or shortly after birth. **Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment ["Plaintiff's Memorandum"],**

**filed April 11, 2005, at 2.** On May 16, 2003, the Plaintiff formally requested leave under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2615 *et seq*., for a period of three months to begin on July 11, 2003, the scheduled date the Plaintff was to undergo a Cesarean section to deliver the baby. *Id.* On the same day, the Plaintiff twice notified her supervisors, Peter Marcovic and Johnnie Adcock, of her discovery of pornographic web addresses on her computer. *Id.*, **at 2-3.**

Following the Plaintiff's complaints, the Hospital's department of information technology ("IT Department") was notified and began a review of the Internet file logs of its employees. *Id.*, **at 4.** After narrowing the search to a specific time period surrounding the Plaintiff's complaints, the review showed a significantly larger number of potentially pornographic websites accessed under the Plaintiff's user identification than under other employees' user identifications. *Id.*, **at 5.** A further narrowing of the search to include just those sites accessed through the Plaintiff's user identification during a two-day period indicated a series of pornographic websites. *Id.*

The report of this investigation was presented to Defendant Sams on May 22, 2003, with the explanation that while it showed the Plaintiff's user identification was linked to each of the accessed websites, this did not necessarily indicate that it was the Plaintiff who was accessing them. *Id.*, **at 6-7.** Defendant Sams was notified of two potential alternative explanations; that someone had knowledge of the Plaintiff's user identification and password and was accessing these websites with that information; or that the Plaintiff had failed to close all applications and log out after using a computer and another individual then accessed the websites under the Plaintiff's user identification. *Id.*, **at 6-7; Deposition of James C. Yaekel, taken January 19, 2005, at 26.**

After receiving this information from the IT Department, Defendant Sams conducted her own investigation as to whether the Plaintiff was responsible for viewing the pornographic websites. As part of this investigation, Defendant Sams examined patient activity logs, triage reports, security logs, and questioned other staff on duty with the Plaintiff on May 16. **Plaintiff's Memorandum, at 9.** After taking these steps, Defendant Sams interviewed the Plaintiff regarding the allegations on May 29, 2003, following a required performance evaluation. At this meeting and after conducting the required evaluation and questioning the Plaintiff about the allegations, Defendant Sams suspended the Plaintiff for viewing the pornographic websites. *Id.*, **at 11-12.** Defendant Sams stated she determined the Plaintiff was responsible for viewing the websites because, based on the reports she reviewed and her investigation, the Plaintiff had the opportunity and time to view the websites at the exact times they were viewed. **Exhibit 9, Affidavit of Gayle Sams,** *attached to* **Defendants' Memorandum in Support of Motion for Summary Judgment ["Defendants' Memorandum"], filed March 10, 2005, ¶ 5.** The following Monday, June 2, 2003, after reviewing her investigation again, Defendant Sams terminated the Plaintiff. **Defendants' Memorandum, at 12.**

The Plaintiff filed this action against the Defendants on April 22, 2004. On July 2, 2004, the Court denied Defendants' motion to dismiss. On March 10, 2005, the Defendants moved for summary judgment and the motion was referred to the Magistrate Judge for a memorandum and recommendation. Magistrate Judge Howell issued his memorandum and recommendation granting in part and denying in part the Defendants' motion on May 16, 2005. The Defendants thereafter filed timely objections to Magistrate Judge's memorandum and recommendation.

## II. STANDARD OF REVIEW

The district court conducts a *de novo* review of those portions of a magistrate judge's memorandum and recommendation to which specific objections have been made. ***Strawbridge v. Sugar Mountain Resort, Inc.*, 243 F.Supp.2d 472, 475 (W.D.N.C. 2003).** While the Court will not address general objections to a memorandum and recommendation because such objections have "the same effect as would a failure to object . . . making the initial reference to the magistrate useless[,]" the Court will give careful review to all portions of the Memorandum and Recommendation to which no specific objection is made. ***Id*. (quoting *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)).**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." **Fed. R. Civ. P. 56(c).** A genuine issue of material fact exists where there is evidence, while viewing the underlying facts and all reasonable inferences in the light most favorable to the non-moving party, such that a reasonable jury could find in favor of the non-moving party. ***Matsushita Elec. Indus. Co v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986)**.

## III. DISCUSSION

**A. Causation and the Prima Facie Case**

The Defendants' first objection is that the Magistrate Judge erred in finding the Plaintiff had satisfied the causation element of the prima facie case for a FMLA retaliation claim.

In order to make out a prima facie case of a FMLA retaliation claim, the plaintiff bears the initial burden of putting forth evidence that (1) she exercised a FMLA protected right; (2) she suffered an adverse employment action; and (3) there was a causal connection between the two. ***Blankenship v. Buchanan Gen. Hosp.*, 140 F.Supp.2d 668, 674 (W.D. Va. 2001).** Once the prima facie case is satisfied, under the familiar framework of the *McDonnell Douglas* analysis, the burden shifts to the Defendants to put forth a legitimate, non-discriminatory reasons for their action. ***McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Nichols v. Ashland Hosp. Corp.*, 251 F.3d 496, 502 (4th Cir. 2001).** Upon satisfaction of this burden, the Plaintiff must then prove that the nondiscriminatory explanation put forth by the Defendants is a pretext for discrimination. ***Id.***

The burden of proving a prima facie case is not onerous. ***Yashenko v. Harrah's NC Casino Co., LLC*, 352 F.Supp.2d 653, 661 n.8 (W.D.N.C. 2005) (citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).** It is undisputed that the Plaintiff has met the first two criteria. As to the third requirement, a plaintiff may show that the requisite causal connection by showing "a close temporal proximity" between the exercise of the protected activity and the adverse employment action. ***Blankenship*, supra.** In the case at bar, the Plaintiff was terminated from her position 17 days after she formally requested three months of FMLA leave. The Court finds that the close proximity between the date she requested the FMLA leave and the date she was terminated satisfies the final element of the Plaintiff's prima facie case.

**B. Pretext**

The Defendants' second objection is to the Magistrate Judge's finding that the Plaintiff had sufficiently proven the Defendants' proffered reason for the Plaintiff's termination was a pretext for discrimination.[1]

At this stage of the analysis, a plaintiff must put forth evidence that the employer had a discriminatory motive or the employer's proffered explanation is unworthy of credence. ***Yashenko, supra*, at 661.**[2] In support of her argument that the Defendants' proffered reason for terminating her was a pretext for discrimination, the Plaintiff argues that the Defendants had a financial motive to terminate her rather than provide FMLA benefits. While the Defendants are correct that any involuntary termination provides some type of monetary savings to an employer, this fact does not prevent such monetary savings to be considered, along with other factors, in determining whether that employer's proffered reasons for its actions are a pretext for discrimination. The evidence, when viewed in the light most favorable to the Plaintiff, shows that Defendant Sams' compensation was dependent in part on the emergency department

---

[1] In its de novo review, the Court has chosen not to consider either the evidence of the Plaintiff's condition and personal circumstances at the time she allegedly viewed the pornographic websites, or Plaintiff's Exhibit N detailing the financial condition of the Defendant Hospital. Such evidence was considered by the Magistrate Judge and the Defendants have specifically objected to that consideration.

[2] The Defendants argue that in order to prove pretext, the Plaintiff must prove both that the proffered reason for the employment action is unworthy of credence and that discrimination was the real motive. **Defendants' Reply Memorandum in Support of Defendants' Motion for Summary Judgment, filed April 25, 2005, at 11.** However, the Fourth Circuit has explained that "[a] prima facie case coupled with probative evidence 'that the employer's explanation is false,' would counsel against granting the employer summary judgment unless the employer presented other strong evidence from which 'no reasonable factfinder could conclude' that there was discrimination." ***Price v. Thompson*, 380 F.3d 209, 214 (4th Cir. 2004) (quoting *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 149 (2000)).**

meeting its budget.  **Deposition of Gayle Sams, taken January 20, 2005, at 30; Deposition of Lora McCall Harris, taken January 18, 2005, at 25; Exhibit 8, Second Affidavit of Hope Reynolds,** *attached to* **Defendants' Reply Memorandum in Support of Defendants' Motion for Summary Judgment, filed April 25, 2005, ¶ 5 (stating the value of the Plaintiff's accrued leave that would have been due her had she been granted FMLA leave.)** Therefore, coupled with the monetary benefit of Plaintiff's termination,[3] it could reasonably be inferred that the Defendants had a financial motivation to terminate the Plaintiff prior to her FMLA leave.

Further, there is also evidence that at least one similarly situated employee of the Defendant Hospital was treated differently.  The evidence shows that on two other occasions, an employee of the Defendant Hospital committed the same offense as the Plaintiff and, unlike the Plaintiff, was not subsequently terminated.  **Plaintiff's Memorandum, at 14.**  The Defendant Hospital argues that such evidence is not probative because the other employees were not similarly situated in that they each had different supervisors than the Plaintiff here.  ***See, Bryant v. Food Lion Inc.*, 100 F.Supp.2d 346, 371 (D.S.C. 2000),** *aff'd*, **8 Fed. Appx. 194 (4th Cir.**

---

[3]While the Defendants assert that "it actually cost [them] more to terminate Plaintiff than to retain her services," they have previously acknowledged that "there is some type of monetary savings to employers with almost each involuntary termination."  **Defendants' Objections to the Magistrate's Memorandum and Recommendation, filed May 31, 2005, at 6-7.**  The evidence also shows that Plaintiff was entitled to over $4,000 of vacation and sick time as well as uncalculated health insurance benefits from the Defendants' self insured plan that the Defendant Hospital would have been responsible for had the Plaintiff taken her FMLA leave.  **Exhibit 8, Second Reynolds Affidavit,** *supra*.  Defendant Sams stated that she did not have knowledge of employees' insurance claims and only actively monitored portions of the vacation pay payable to employees.  However, her position included a responsibility for computing the emergency department's annual budget; insurance claims and all payable sick and vacation claims generally contribute to the department's budget expenses and would be avoided if an employee was terminated.

**2001).** However, such a requirement is flexible where the plaintiff's supervisor "was aware of the discipline meted out to past violators." *See, e.g., McMillan v. Castro*, **405 F.3d 405, 414 (6th Cir. 2005);** *Seay v. Tennessee Valley Auth.*, **339 F.3d 454, 479 (6th Cir. 2003).** Viewing the evidence in the light most favorable to the Plaintiff, Defendant Sams was made aware of at least one of the prior violations and the discipline that violator received prior to investigating and deciding to terminate the Plaintiff. James Yaekel, who was the supervisor of Bruce McCrary when McCrary was found to have visited a pornographic website using the Hospital's computer, stated that he conveyed to Defendant Sams information about that incident, that he had chosen only to reprimand McCrary and place him on probation, and that he had discussed it with the CIO before the decision was made.[4] **Yaekel Deposition,** *supra*, **at 35-36.** Therefore, the Court concludes,[5] that with regard to at least one of the prior instances of employees who committed similar acts, the Plaintiff was sufficiently similarly situated, and evidence that the Plaintiff was treated differently is probative as to whether the Defendants' proffered reasons for terminating her were pretextual.[6]

---

[4]The Court also notes that both James Yaekel and Bruce McCrary were involved in the investigation of the Plaintiff's alleged violations.

[5]Defendant Sams testified in her deposition that she asked and was not made aware of any prior precedent involving similar employee incidents. **Sams Deposition, at 96.** However, viewing the testimony of James Yaekel in the light most favorable to the Plaintiff, the Court must conclude that, for purposes of this motion, Defendant Sams was made aware of the prior incident involving Bruce McCrary and the punishment he received.

[6]The Court notes that there is no evidence that Defendant Sams was aware of the other incident in which an employee had committed a similar act. However, the Court has been presented with only excerpts of the depositions in this case and, therefore, such evidence may be included in portions not filed with the Court. Regardless, at this time, the Court only considers the incident involving Bruce McCrary as evidence of similarly situated employees treated differently. Moreover, there may also have been one prior incident where an employee was

Moreover, the temporal proximity of the protected activity and the adverse employment action, in addition to being probative of causation, may also be evidence of pretext. ***Yashenko**, **supra***, at 662 ("[I]n some cases temporal proximity is sufficient to establish pretext[.]"); ***Blankenship**, **supra**.* The Plaintiff provided notice to the Defendants of her intention to take FMLA leave on May 16, 2003, the very day she reported the pornographic websites had appeared on her computer. An investigation was subsequently initiated and she was terminated within three weeks of this date. The Court believes such proximity in time between the incident at issue and the Plaintiff's exercise of her rights under the FMLA could reasonably be inferred by a jury to be evidence of pretext.

The parties spend considerable time arguing over the thoroughness of Defendant Sams' investigation into the allegations against the Plaintiff and its relevance to a finding of pretext. As the Defendants correctly argue, whether or not Defendant Sams' investigation into the Plaintiff's conduct was ultimately correct is not at issue in this case. However, the Court believes that if the evidence shows that the Defendants ignored evidence to the contrary and did not investigate other possible explanations of the viewing of pornographic websites on the Plainitff's computer by other individuals, such evidence could be probative of pretext. ***See, Whalen v. United Airlines, Inc.**, 972 F.2d 357 (table), 1992 WL 180124, * 4 (10th Cir. 1992) ("An employer's lack of inquiry into the validity of its reason for terminating an employee may show its belief in the validity of that reason was incredible, and the reason merely a pretext for discrimination." (citing *Bechold v. IGW Sys., Inc.*, 817 F.2d 1282, 1285 (7th Cir. 1987))).* The

---

terminated for viewing pornographic websites. **Deposition of Peter Marcovic, taken November 15, 2004, at 19-22.** However, Marcovic stated that he did not believe Defendant Sams was aware of this incident. ***Id.***

Court finds that there is evidence that creates a genuine issue of fact as to whether Defendant Sams sufficiently investigated the validity of the possible alternative explanations supplied by the Hospital's IT Department in response to the evidence she gathered. The Hospital's IT Department informed Defendant Sams that pornographic websites could have been accessed with the Plaintiff's computer identification but without her knowledge if someone else knew her user identification and password, or if the Plaintiff had failed to log off after using the computer. **Yaekel Deposition, at 22, 25-26, 32.** The evidence shows that aside from asking, what Defendant Sams described as, "a very general question"[7] to the other staff and patient liaisons on duty on May 16, 2003, Defendant Sams does not appear to have actively investigated in any manner the alternative conclusions put forth by the IT Department and supported by the Plaintiff's complaints. **Sams Deposition, at 95.** Defendant Sams explained that such further investigation was unnecessary based on her conclusion that the Plaintiff was responsible for viewing the websites after her examination of emergency room assignment sheets, the patient activity logs and triage sheets, security reports, and the above mentioned questioning of other staff members. **Defendants' Objections, at 5-6.** From the reports reviewed, Defendant Sams concluded that the Plaintiff was not in the triage area with patients and was available to view the pornographic websites at the exact times they appeared on her computer. **Exhibit 9, Affidavit of Gayle Sams,** *attached to* **Defendants' Motion, ¶ 5.** Furthermore, Sams alleges she was able to conclude from these reports that the Plaintiff triaged a patient during the four-minute interval between the times two separate websites were viewed on her computer. *Id.* However, the Court

---

[7]Defendant Sams testified that she asked other staff members and patient liaisons, "Did you see anybody that was unusual back . . . in the triage area?" **Sams Deposition, at 95.**

finds there is a genuine issue of fact as to whether these reports could support a conclusion that Defendant Sams sufficiently inquired into the validity of the stated grounds for the Plaintiff's termination. The activity logs produced by the Defendants contain the check-in time, registration time, and check-out time for each patient. **Attachment A,** *attached to***, Sams Affidavit.** The triage reports also contain a time that each was last updated and printed; however, Defendant Sams averred that the triage reports do not reflect the time a patient was actually triaged. **Sams Affidavit,** *supra* **("[T]he triage reports do not reflect the exact time in which a patient is triaged.")**. In reviewing these reports, it is not clear how her conclusions on the exact times that the Plaintiff triaged patients are revealed, since the Defendant Sams admits these reports do not include an accurate accounting of the time period the Plaintiff was actually triaging a patient. Johnnie Adcock confirmed the inherent inaccuracy of these reports in his deposition, indicating that the triage reports do not include the time period over which the patient was triaged. **Deposition of Johnnie Adcock, taken January 18, 2005, at 34-36.** Adcock further explained that the name at the top of each triage report did not necessarily indicate the nurse which actually triaged the patient. ***Id.*, at 39;** *see also,* **Deposition of Peter Marcovic, taken November 15, 2004, at 95-96.** This would be the case if one nurse had failed to log out of a computer into which another nurse entered information for a triage report. **Adcock Deposition, at 39.** The Defendants have failed to accurately explain Defendant Sams' conclusions derived from these reports and, therefore, such reports hold only limited probative value as to the validity of Defendant Sams' conclusion that the Plaintiff had viewed the pornographic websites. As such, Defendant Sams' investigation and her choice to discount other plausible explanations based on

her interpretation of these reports, could reasonably be considered by a jury as evidence of pretext.

In sum, the Court believes that the evidence as a whole, when viewed in a light most favorable to the Plaintiff, could support a reasonable conclusion that the Defendants' proffered reason for terminating the Plaintiff was a pretext for discrimination based on the the exercise of her FMLA rights. Therefore, Defendants' motion for summary judgment as to this claim is denied.

**C. Claim against Defendant Sams, Individually**

The Defendants also object to the Magistrate Judge's conclusion that Defendant Sams, as an employee of a public employer, may be sued individually under the FMLA.

Despite the Defendants' objection, the Court agrees with the Magistrate Judge and interprets the plain meaning of the text of the FMLA to allow employees of public agencies to be liable under the Act. *See, Sheaffer v. County of Chatham*, 337 F.Supp.2d 709 (M.D.N.C. 2004); *Cantley v. Simmons*, 179 F.Supp.2d 654, 656-57 (S.D. W. Va. 2002) (noting that "[t]he majority of courts that have examined the FMLA's statutory language have concluded that a plain reading indicates that public employees may be considered 'employers' under the FMLA."); *but see*, *Mitchell v. Chapman*, 343 F.3d 811, 832 (6th Cir. 2003), *cert. denied*, 124 S. Ct. 2908 (2004) (interpreting the text of the FMLA to not allow employees of public agencies to be considered employers under the FMLA); *Keene v. Rinaldi*, 127 F.Supp.2d 770 (M.D.N.C. 2000) (same). When interpreting a statute, the plain meaning of the text controls except where a literal meaning would "compel an odd result[.]"

*Public Citizen v. U.S. Dept. of Justice*, **491 U.S. 440, 454 (1989).** The text of the FMLA includes public agencies within the definition of an employer. **29 U.S.C. § 2611(4)(A)(iii).** Furthermore, the Act also includes within the definition of an employer "any person who acts, directly or indirectly, in the interest of an employer." *Id.*, **at § 2611(4)(A)(ii)(I).** There is no indication in this statute that the provisions including certain employees within the coverage of the FMLA as employers were intended only to apply to private companies and not public agencies. *Sheaffer, supra*, **at 728.** To the contrary, the plain meaning of the text of the statute and the structure of its subsections indicate to this Court that such employee coverage extends to employees of all entities which are considered employers under the FMLA, including public agencies. *Id.* Therefore, the Defendants' motion for summary judgment as to the Plaintiff's FMLA claims against Defendant Sams, individually, is denied.

**D. Wrongful Termination in Violation of Public Policy Claim**

The Defendants argue that the Magistrate Judge erred in failing to dismiss the Plaintiff's state law claim of wrongful discharge in violation of public policy. The Defendants contend that the Plaintiff cannot sustain a claim for wrongful termination based on the discriminatory conduct alleged by the Plaintiff.

The North Carolina Supreme Court has instructed that "[i]n order to support a claim for wrongful discharge of an at-will employee, the termination itself must be motivated by an unlawful reason or purpose that is against public policy." *Garner v. Rentenbach Constr. Inc.*, **350 N.C. 567, 571-572, 515 S.E.2d 438, 441 (1999).** Public policy of the state has been further defined as a "principle of law that holds no citizen can lawfully do that which has a tendency to

be injurious to the public or against the public good." ***Johnson v. Mayo Yarns, Inc.*, 126 N.C. App. 292, 296, 484 S.E.2d. 840, 843 (1997).** The Court concludes that such a definition of public policy includes within it the Plaintiff's allegations. Certainly North Carolina's public policy does not condone or permit the discriminatory conduct alleged by the Plaintiff, and the allowance of such would be against the public good. Having recognized that the alleged conduct may support such a claim, the Court, for the same reasons it has denied summary judgment as to the Plaintiff's FMLA retaliation claim, also denies summary judgment as to the Plaintiff's wrongful discharge claim.

### E. Infliction of Emotional Distress Claims

The Defendants' final objection is that the Magistrate Judge erred in finding that the Plaintiff satisfied the elements for a claim of intentional infliction of emotional distress.

There appears to be some confusion regarding Plaintiff's claims for intentional and negligent infliction of emotional distress and the Court's July 2, 2004, Order. In her complaint, the Plaintiff alleged one claim of *negligent* infliction of emotional distress. In the Court's July 2, 2004, Order, this claim was interpreted as one for *intentional* infliction of emotional distress. After review of the pleadings once again, and reconsidering its prior Order, the Court finds the Plaintiff properly pled a claim for *negligent* infliction of emotional distress. ***See R.M.S. Titanic, Inc. v. Wrecked and Abandoned Vessel*, 924 F. Supp. 714, 716 (E.D. Va. 1996) (stating the Court has the power "to reconsider its prior Order either sua sponte under Rule 60(b) of the Federal Rules of Civil Procedure or under its inherent power to modify and interpret its original order").** Furthermore, after reviewing the evidence presented to the Court in the

light most favorable to the Plaintiff, the Court determines the Plaintiff has proven a genuine issue of fact exists for trial as to her claim for negligent infliction of emotional distress.

It is well established that to support a claim for negligent infliction of emotional distress, a plaintiff must prove "(1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress (often referred to as "mental anguish"), and (3) the conduct did in fact cause the plaintiff severe emotional distress." ***Johnson v. Ruark Obstretics & Gynecology Assoc., P.A.*, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990).** The Court determines that the Plaintiff has put forth evidence that the Defendants negligently engaged in conduct that resulted in the termination of the Plaintiff's employment and insurance benefits. As discussed previously, there is a genuine issue of fact as to whether Defendant Sams sufficiently and reasonably investigated the validity of her stated reason for the Plaintiff's termination, and whether she unreasonably failed to investigate possible alternative explanations. Furthermore, given the Plaintiff's physical and mental condition at the time of her termination, there is evidence that it was reasonably foreseeable that such conduct would cause and, in fact, did cause the Plaintiff severe emotional distress. Therefore, summary judgment as to Plaintiff's negligent infliction of emotional distress claim is denied.

To the extent that the Plaintiff has asserted a claim for intentional infliction of emotional distress, the Court finds such a claim does not survive Defendant's motion for summary judgment. Under North Carolina Law, for a plaintiff to succeed on a claim for intentional infliction of emotional distress, she must prove the following elements: "'(1) extreme and outrageous conduct, (2) which is intended to cause and does cause, (3) severe emotional distress to another.'" ***English v. General Elec. Co.*, 977 F.2d 572 (table), 1992 WL 266929, *3 (4th Cir.**

**1992) (quoting *Dickens v. Puryear*, 276 S.E.2d 325, 335 (N.C. 1981)).** The standard for conduct to be considered extreme and outrageous under North Carolina law is a rigorous one. *Id.* The North Carolina Supreme Court has stated that such conduct will only be recognized where it "exceeds all bounds usually tolerated by decent society." ***Stanback v. Stanback*, 297 N.C. 181, 196, 254 S.E.2d 611, 622 (1979) (quotations omitted).** The North Carolina courts have also looked to the *Restatement (Second) of Torts* in defining extreme and outrageous conduct. The *Restatement* instructs that, "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, and to be regarded as atrocious, and utterly intolerable in a civilized community." ***Restatement (Second) Torts*, § 46, Comment d; *see also, Briggs v. Rosenthal*, 73 N.C. App. 672, 677, 327 S.E.2d 308, 311 (1985) (quoting *Restatement (Second) of Torts*, § 46, Comment d).**

Also in accordance with the *Restatement*, those courts applying North Carolina law have recognized that "[t]he extreme and outrageous character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity." ***Restatement (Second) of Torts* § 46, Comment f; *see also, English, supra*, at \*8.** However, in these circumstances "[i]t must be emphasized again . . . that major outrage is essential to the tort; and the mere fact that an actor knows that the other will regard the conduct as insulting, or will have his feelings hurt, is not enough." ***Restatement, supra*; *see also, English, supra* (finding that despite the fact the plaintiff was "particularly susceptible" to emotional distress, nonetheless [the defendant's] conduct did not effect "major outrage.").**

Applying the above standards to the case at bar, the Court determines that the conduct complained of by the Plaintiff does not rise to the level of extreme and outrageous. It is undisputed that the Defendants had knowledge that the Plaintiff was particularly susceptible to emotional distress given the state of her pregnancy and the diagnosed condition of her unborn child. However, the Plaintiff has not alleged, nor does the evidence show, specific conduct by the Defendants of such a nature to sustain a claim for intentional infliction of emotional distress. Even where the plaintiff is found to be particularly susceptible to emotional distress, a termination from employment, even if found unlawful, does not by itself constitute extreme and outrageous conduct. ***English, supra*, at 7 (citing *Halburjak v. Prudential Bache Sec.*, 759 F. Supp. 527 (W.D.N.C. 1991)).** Therefore, the Court grants Defendants' motion for summary judgment as to the Plaintiff's intentional infliction of emotional distress claim.

## IV. ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's motion for summary judgment is **DENIED** as to Plaintiff's FMLA claim against Defendant Pardee Hospital, and Defendant Gayle Sams, individually.

**IT IS FURTHER ORDERED** that Defendant's motion for summary judgment is **DENIED** as to Plaintiff's claim for wrongful discharge in violation of public policy.

**IT IS FURTHER ORDERED** that summary judgment for the Defendant is **DENIED** as to the Plaintiff's claim for negligent infliction of emotional distress.

**IT IS FURTHER ORDERED** that Defendant's motion for summary judgment is **GRANTED** as to Plaintiff's claim of intentional infliction of emotional distress and the same is hereby **DISMISSED WITH PREJUDICE**.

**Signed: June 21, 2005**

Lacy H. Thornburg
United States District Judge